Good morning. May it please the Court. My name, as the Court is aware, is Gabriel Bassan, and I'm here representing Mr. Dahlberg. You may want to get a little closer to the microphone. Can you hear me, Judge Gould? Yes, I can hear you. Thank you very much. You can just pull it toward you a little, too, yeah. As a long-time public defender, I'm more used to sort of moving around the world. Wandering around, yes. I think those microphones are fairly directional. Okay. So if you speak into it, you'll boom across the room. Thank you. With me is my client, Mr. Dahlberg. He was recently released from custody, and he did get a travel pass from his parole agent to be with us today. Good morning. Let me address my first claim, which is the claim that my client was convicted of the sentencing enhancement, personally inflicting great bodily injury, without sufficient evidence. In order for us to prevail on that, we really only have to show two things, I believe. First, we need to show that the sentencing enhancement does, in fact, require personal infliction of the bodily injury. And this is one of those rare and lovely cases where the language of the statute means exactly or says exactly what it means. And the California Supreme Court cases of Cross and Coles make that very clear. This point, in fact, isn't disputed by the Attorney General. The government does not dispute that the appropriate understanding of this enhancement is that the infliction must be direct at the very hands of, if you will, the defendant. The other point that we have to show in order to prevail is that, in fact, my client didn't personally inflict this injury. And that's crystal clear. Nobody denies the fact that he was standing next to the officer talking to him when this other car, this third person who was blinded by the CHP officer's lights, drove into the van and it rolled onto both of them. Nor does the Attorney General dispute that the opinion of the court of appeal, and when I say the court of appeal at all times, I'll be talking about the State Supreme Court of Appeal, is inconsistent with the cases of Cole and Cross, the California Supreme Court. What they have argued instead is this somewhat remarkable argument in my mind, which is that despite being inconsistent with the Supreme Court's rulings, California Supreme Court's rulings, this Court is bound by the unpublished opinion of the court of appeal. It seems to me remarkable, that this theory, but that is it. Now, I was – I obviously spoke to that in my reply brief. What I was remiss in not mentioning in my reply brief, and I'd like to mention now, is that the cases that the Attorney General cited for that point, in each and every one, those – the State law was coming from the highest court of that State. In Waddington, it was the Washington State Supreme Court. In Bradshaw, it was the Ohio State Supreme Court. In Woods, again, it was the Washington State Supreme Court. Even one case that wasn't cited but that was cited by one of the cases they cited, that was Mulaney v. Wilbur. Again, it was the Maine State Supreme Court. In none of these cases do you have a situation where the court is saying, it doesn't matter what the binding and settled law is for the State generally, whatever this court said, this court of appeal said, is law for this case. We can't have two laws. Either the State or the State.   And I'm just going to ask you a question, because you're, I know, well experienced in these habeas restrictions that we operate under. And that is that, in effect, you're saying, well, they made a mistake in interpreting the State law. Do we start with that? I should say, yes, the court of appeal made a mistake with respect to State law interpretation. Is that your first premise? That is – well, that, I would say, is my second premise. My first premise is, obviously, what gets me into this Court, which is that my client was convicted on evidence that was not sufficient to convict him of this statute. In order to prove that, of course, this Court needs to be able to define what that enhancement was. So then, when you go to that, and we're then being asked to, in effect, say that the court of appeal misinterpreted State law, in your view, aren't we right back into what we can't do in habeas? Not at all. Respectfully, not at all, Your Honor. Tell us why, then. Because, and in fact, the Waddington case, I think, is on point to this. You have to apply – you cannot reapply, you cannot reinterpret State law. You have to apply State law as it is. I think we all agree on that. And to the extent that the State law, as stated by a court of appeal in an unpublished opinion, is absolutely and clearly inconsistent with what the California Supreme Court says, yes. Well, but Waddington, that's the Federal case. That's where it – that was where Federal court, in effect, was trying, potentially, to rewrite State law. Yes. So it doesn't really help us too much, I don't think. Well, it does, if I might. What the Attorney General, I would say, is asking you to do is to rewrite State law here. Because if the court – No, because we're looking at the – to just be precise, we're looking at the State court of appeal. And the question is, is the State court of appeal interpreting State law rather than rewriting it, and does it matter, and where does that leave us as a Federal court? I think it is – it is – it is – I wouldn't say rewriting. I would say simply ignoring State law. But as a Federal – yes, as a Federal court, you – you have a Federal claim in front of you. In order to – in order to analyze this Federal claim, you have to understand what the State law is. The State law is what the California Supreme Court says it is. It's not what a court of appeal says in an unpublished opinion. That's why I gave – You keep saying in an unpublished opinion, but I don't know that that affects things in that that's the bulk of what we see in California cases. Of course. Of course. I think you'd have to agree that the fact that it's unpublished doesn't somehow make it a lesser interpretation of California law for this case. Respectfully, I do, in the sense that the – when a court of appeal doesn't publish its opinion, it says, we're not standing by this as a light for other courts to determine that we're saying that the law is correct. I think where the – the gap between us, and I – you're not an advocate, but you're positing it. No, I'm just trying to understand where we fit in as the Federal court. Right. Is that this Court, I think – when a court of appeal makes a – makes an opinion, and that opinion is so at odds, so clearly inconsistent with what the State law is, this Court is not bound by it. It is bound by what the State law actually is. And I did make a metaphor, and maybe I'll raise it again here. If you have a rape case and the court of appeal says, consent is not a defense to rape. Now, that's clearly inconsistent with what the California Supreme Court says. If that case came to this courtroom here, I don't think this Court would say, well, the court of appeal says, consent is not a – you know, is not a defense to rape. Do you – what do you think would be the best case or cases for us to look at where the Federal court has not reinterpreted the law at odds with Waddington, but has made a determination that the State court was, as you say, so at odds that we're not bound? Do we have such a case? That's why I raised Waddington, which is not – I agree with you, is not on all fours. But it is a point – the court there does say you can't look at what the appellate court is saying. You have to look at what the Supreme Court of Washington is saying. And I think that's what this Court must do also. I think that's what this Court must do also. Oh, boy. We'll give you some more time. We'll give you about all the time, but I think there might be another question. I have one question. I just want to make sure I've got your – the crux of what you're asking us to do clearly in mind. So, as I understand it – and correct me if I'm wrong – under Jackson v. Virginia, on your sufficiency of evidence claim, we ask whether, looking at all the evidence and giving the government every reasonable inference, there's sufficient evidence to convict beyond a reasonable doubt. Correct. So, and what you're – that has to be on each element of the crime. And you're asking us to look to the State Supreme Court, not this appellate court, as to what the elements of the crime were. And your argument is that one of the elements is this intentional infliction of injury, and there's no evidence of that. That's correct. So, let me ask you one question that relates to that. If, given the government all inferences, an inference could be made that that appellant drove his car to the middle of the road, that it wasn't the friends or someone else who did it, that he himself put the car there, okay? If that's true and if it's foreseeable that someone could crash into it, then does that satisfy, in your view, the Supreme Court element of intentional infliction of harm? Absolutely not, Your Honor. The argument or the theory which you just laid out was the trial court's theory, I think. But the important point here is, if he drove the car there, that would be proximate cause. No one's saying it's not a cause. It is a proximate cause of the injury. Because it's a proximate cause of the injury, that allowed the prosecution to argue that this was a DUI-inflicting injury, because all you need for that charge is that his actions be a proximate cause of the injury. But then California law says, when somebody's a proximate cause, that's one thing. We wish to punish him more severely, and thus the sentencing enhancement, if he's more than a proximate cause, if he's a direct and personal cause whereby his own hands, so to speak, he's inflicted that bodily injury. So we require more than proximate cause for that. We require direct personal infliction. So, for instance, if one looks at Colston Cole, but the Cole case, or the Cross case, one in which the defendant actually impregnated his stepdaughter, then drove her to the abortion clinic, almost forced her to have the – you know, certainly encouraged her to her, and the district attorney said in that case, well, the abortion is personal infliction of great bodily injury. Certainly, no one can argue that this man wasn't a proximate cause of the injury. I mean, he's the one who impregnated her in the first place. He's the one who encouraged her to get the abortion. He's the one who brought her to the abortion clinic. But the Court said, even so, he is not a personal inflictor. Sorry, I'm not sure that's really a word. But he did not personally inflict the bodily injury. That was the surgeon, the doctor who performed the abortion. Kagan. In this case, is there someone who personally inflicted it? Do you believe it's the officer? No, absolutely not. The person who – Okay. So no one personally inflicted it. No, respectfully, no. The third-party driver personally inflicted it. He drove the car into them. Right. But can there – can there not be two parallel personal inflictors? In other words, he drove the car right into a car that was in the middle of the road or a truck that's in the middle of the road. Right. There can be, if two cars drove in at the same time, yes. So in other words, if – if I parked my semi across a freeway, so there's like six lanes, and somebody runs into my semi and then is injured or dies or whatever, I as the semi driver have not personally inflicted injury. Is that correct? That's correct. You approximately caused the injuries. That would allow the court – let's say you had been drinking before you did this. Sure. Then you can do the DUI. Then you can do the DUI with injury because you approximately caused it. Even though you didn't drive into the person yourself, you are an approximate cause, and you can still be found guilty. So it's a little bit of an odd thing because you do have a Jackson v. Virginia – that's really your Federal claim, but you're in effect saying that no – even taken in the light most favorable to the prosecution, no one could determine that your client was the actual personal cause. It is an unusual claim in this respect, that it is presented in a – in this context. There is no dispute about the facts. Sure. The dispute is about the legal extent of the – the sentencing statute. If the court applies what Cross and Coles, what the California Supreme Court says, then there is insufficient evidence because the client personally – no one is arguing that my client actually struck the officer. In fact, as pointed out in the other case, in the Cross case, and I may be mixing the two names up. I'm afraid we'll start with C. Even if my client had said to this third-party driver on his cell phone, okay, I've got the CHP driver here on the side of the road, come run him over, my client still wouldn't be. Because in that – the case that I'm talking about, you have two people, one person says to the other, shoot that man. He's the – I'm the boss, I say to my underling, shoot the man. Even – how could I be more responsible? And yet I'm still not responsible for personally inflicting the injury. All the machinery is. I think we have your argument well in mind. Thank you. Kennedy, let me ask a question. Where is that argument outlined in the blue brief, in the opening brief? It is in my discussion of Claim 1. I can give you the actual page numbers. Yes, I am. Starting at page 27, Your Honor, and the pages – the next four or five pages from there. Twenty-seven. Twenty-seven. Thank you. That's basically your heading. I mean, in other words, that you – you headline your argument. Yes. And then – and then it's just that section through there. All right. Thank you. Obviously, I don't have time to talk about Claims 2 or 3, and we have all the briefings. Yes, you do. Thank you very much. Thank you. Good morning, Your Honor. This is David Andreldich, Deputy Attorney General for Respondent. I take exception to the idea that Respondent has conceded that it literally must be at a person's hands for that person to have directly inflicted injury, and personally. The law as interpreted by the California Court of Appeal is that there can indeed be multiple causes that are direct and personal. What matters is you – in order to find whether there was more than one cause, you look at what actions were there that substantially contributed. And in determining whether those – it was personal, you determine who did those actions. Here, there were two causes, a car being placed in the – in the road, and another cause in that, a car coming toward that car. Now, the defendant petitioner committed the first act. Since that act substantially committed – contributed to the injury, he personally caused the injury directly. No one else – it would be one thing if someone else had driven the car there. Then, even at defendant's direction, then there would have been an intermediary who did the act that caused the injury. He – when he says, well, yes, there can sometimes be – sometimes be parallel causes, but he says, basically, they have to be at the exact same time. He – the State – the Court of Appeal clearly disagreed with that. And not only can this Court not second-guess the Court of Appeal in that regard as to State law, he doesn't identify any case that – Counsel, if I could ask you a question on that last point you made in argument, because that's the theory of this I'm straining to understand. So I understand under Jackson v. Virginia, we certainly have to look at the evidence in the life favorables of the government. That means that we have to look at the evidence, assuming that Mr. Dahlberg placed his car in the middle of the road, not that it was done by somebody else. But when we get to the point of you saying we cannot question the Court of Appeal's decision, I wonder what's the best case that you're aware of that says that. In other words, why are we prohibited from looking at the State Supreme Court's law and asking whether the element of intentional infliction of injury is satisfied by the facts in the right most favorable to the government? The answer is that it's a purely State law question. And the answer to that is that a Federal constitutional claim of insufficient evidence involves, arising from a State court, involves two distinct inquiries. The first is the definition of State law. That is a purely State law question, i.e., what facts hypothetically would satisfy the legal definition of this crime. That is purely State law. And I agree with that entirely, but the question is, can we look to the State? Are we bound by what the Court of Appeal says on that? You are. Or can we look to the State Supreme Court? And is there a case that clarifies that? You cannot recanvass the State law cases to decide what the best interpretation of it is and whether or not you agree with the California Court of Appeal's interpretation. California Court of Appeal was responsible for deciding what the relevant cases were, what the relevant statutes were, and reaching a conclusion of saying this is what State law is. To say, no, they're wrong, we think the statute reads differently, or we think the California Supreme Court cases really aren't distinguishable in the way that the State court did, is to second guess the State court on a question of State law. Because counsel brought up this point for the first time at oral argument, that all of these cases are from the Waddington Bradshaw, they're all from the California Supreme Court, I kind of feel okay pointing out. The United States Supreme Court, I believe, has done, held the exact same thing interpreting a intermediate appellate court. I believe that was Estelle v. McGuire. I'm afraid I'm responding on the fly, but I believe they've even shown that's not limited to the State's highest court. Well, I don't think that he was actually saying that. I thought what he was saying is that if you have a circumstance where the court of appeals is wildly off, you've got to look to the controlling law, which is California's law. I think that's what he was saying. To the extent that he is only saying that, I disagree, even so, because this Court does not measure the State court opinion for its reasonable interpretation even of State law. That is purely a question, the reasonableness only applies to either questions of Federal law, looking to Supreme Court opinions, or purely factual questions, i.e., do the facts actually show the the does the evidence support the facts that the State court said were supported by it. So there is no room for a third inquiry as to did they reasonably apply State law. Let me just ask you this. Let's take a simpler case, maybe. Let's say there's, up until today, there's always been two elements to a crime. And the California Supreme Court says, yes, there's two elements to this crime. And then the California court of appeal gets a hold of the case and says, and adds an element to the crime. Okay? I think you mean the other way, but takes one away, because we wouldn't have a defendant complaining. Well, no, he's been – okay, you're right. He takes – I'm sorry, you're right. He takes it away. Now he comes here and says, look, under due process, you know, under Jackson v. Virginia and under due process, how can I get convicted of something where the California court of appeals has done something totally at odds with controlling law? Would he have no remedy? Well, he could try a buoy claim. Right. He couldn't – there's a reason that doesn't arise here, because the California court of appeal had 10 years earlier. Right. So that – so that is his principal protection. But this Court does have a remedy in that it could certify a question to the California Supreme Court. And the Supreme Court of the United States has shown this Court then could – if this – if the California Supreme Court passes on his claim, then this Court may imply that court's interpretation anew as to his claim. But this Court cannot simply say that the California court of appeals misunderstood That's what I'm getting to, and that's why I'm asking you, because it would seem odd indeed if we were to accept your premise 100 percent, in other words, that we may never look – we can never invade the State court if you have justice run amok. And I'm not saying yes or no, that happened, but it could happen. So if you had a substantial question here as to what this term, you know, of the two California, the Cole and the other cases, means, do you think it would be an appropriate case for the California Supreme Court to make that decision? To certify? Yes. That's purely a discretionary call by this Court. I don't think this is a good one. If you – I'm loathe to try to de novo distinguish those two cases, but again, it's not – frankly, it's not that difficult. In both cases, there's only one cause that was being looked at of the injury, and in both cases, defendant was not the person who committed that physical act. So that's in the – let's say the abortion case, it's the person who undertook the abortion. Yes. The person who literally aborted the child. And in the other one, he ordered someone to do the physical act. Neither of those cases involves parallel causes. So they are both readily distinguishable, and indeed, the California court of appeals distinguished them.  I don't think that's a reasonable distinction, even though I think it is, but rather to simply address the concern the Court may have is, are these truly so far afield? They're not. In fact, there's a very basic point of distinction. There was only one cause in both those cases, and it was undisputed the defendant didn't do it. I want to ask a question about the – whether it makes a difference that this is a published case or an unpublished case. None. Now, we have a rule in our circuit, but it's limited to our circuit, that unpublished dispositions cannot be asserted except in rare circumstances. And I'm aware that the California court of appeals – the California Supreme Court can depublish court of appeal cases and thus make them not precedential. But here in this instance, if I understand correctly, the court of appeal actually wrote a unpublished disposition. What is – where do I look to find out – I can find out why we do it, and I can find out what the result is, but I – what is – where would I look to find out what the rule is or what the Supreme Court says the rule is as to the nature of cases where the court of appeal initially files an unpublished disposition? The rules regarding publication of California opinions, I believe, is in California rules of court, 11 – I think it's four or five digits – 8.11-something. But it's not supposed to be published unless it's significant, largely. If it advances the body of law or whatever, it's not supposed to be published just for the sake of publicity. The law actually in 2007, I believe, was changed in rules of court to encourage more publication because it used to be stated in the negative, you shall not publish unless, and now it's stated in the positive, you should publish if. But it does not go to – it generally means it's not particularly important. That's all. It's not – it doesn't mean that it didn't handle the issues properly. It just means it's not – you need not publish a case that's not breaking any new ground. So what you're saying is if it's not really advancing some rule of law, that it's just copying what we believe the rule is? Yes. And that's very similar to what we do. But what we do is that we can't rely on it in other instances, except when the case is directly involved. The same rule applies. So here, even though it's unpublished, it's governing the case because it's involved in the case, even though you wouldn't ordinarily cite it in some other instance. So having explained that to us, how would you directly respond to your adversary who says this makes a difference, where you're contending it makes no difference at all whether this is a published or unpublished disposition? I believe that this Court would not be remiss in applying precisely the same rule that you would apply on federal court. It makes no difference. If an order from this Court affirms or reverses judgment, it is absolutely binding. It is disposed of everything in the case. It does not matter in any event. Well, you're correct that we're bound by it. But he says it, we are not bound by if it's unpublished. I see. I suppose that would be similar to saying that if a district court made factual findings but didn't publish them in the Federal Supplement, that somehow that should be considered less meaningful than a case that does. The Court that passed on his claim and was responsible for doing it did so. It does not matter whether that Court did so in a published or unpublished decision. It simply doesn't. It's illogical to think that it does. On that point, though, I will point out that this Court, one of the reasons this Court is explained why you cannot cite unpublished opinions is because they are often written in a way that's not particularly useful for trying to discern later a rule, which to the extent there have been complaints about how the California Court of Appeal used language in this opinion, I think that actually forms a petitioner not helping. Yeah. Well, in our rules, an unpublished disposition still binds the parties. And I take it your indication is whether it extends the law or provides new law in California, an unpublished disposition, we're bound by that because they're actually making the disposition of that case, whether it extends the law or not.  I'm looking at the other side. That is my argument, yes. Okay. I'm looking at the publication rules, and they do talk about the standards for certification, which are along the lines you said, which is one of which, though, is if you apply an existing rule of law to a set of facts significantly different. But even if under that, the case could have been certified for publication, your argument is that it doesn't really matter. That's a State procedural aspect and not something that affects the actual judgment. Correct. And actually, a party can seek publication of a case that was not initially published and citing that very standard. So if indeed he thought this was such a deviation from prior cases, he could have published it, which might well have increased the likelihood he would have gotten review from the California Supreme Court. Thank you. Are there any further questions? Thank you, Your Honor. Oh, yes, of course. First, I would like to make very clear that my argument does not rise or fall on the fact that this case was unpublished. That's good. I absolutely agree with what the government is saying in terms of why a case is published. It is an unpublished case is law of the case until a higher court overturns it. So my argument rests rather on this point. The law is the law. There cannot be two different laws that are completely inconsistent with one another. I believe that this Court, in looking at the State court, and said, you know, we don't agree with the State court, but the State court's position is a reasonable position, even though we don't agree with it. I think maybe the court is bound. But if the court – I'm not asking this Court to second-guess an interpretation. I'm asking the – I'm saying to this Court, when the court of appeal does something which is, in fact, dead-on inconsistent, it's not – it's not just – May I just ask you about that? Will you respond to his argument that this is different than the abortion and the other case, because you actually have what you've also characterized as these parallel – potential parallel causes? I'm glad you asked that, because that was the third point I was going to make. All right. In this – in this case, if you will, the driver of the car that struck the police officer, he is the doctor in the abortion case. My client, in this case, is the father who impregnated the girl in the abortion case. My client, like the father who impregnated the girl, did something that approximately caused the final – the final injury, but he did not directly, with his hands, with his driving, commit the crime – commit the injury. Just as in the abortion case, he made it possible, because without his proximate cause, we wouldn't be here in the first place. But it was the doctor who actually, if you will, touched the young woman and caused the injury, just as in this case, Mr. Valdovinos, the driver, was the one who actually drove the car and committed the injury. I believe – I'm sorry, I shouldn't – I believe that what we're doing here is mixing proximate cause, which clearly we are, clearly we're a proximate cause. I mean, given the facts of this case, obviously, Claims 2 and Claim 3 would show that we're not proximate cause. But for this argument in isolation, if my client is the one that drove the car there, then there is no question he's the proximate cause of this injury. But the whole point of the sentencing enhancement is to say, yes, proximate cause makes you guilty of the crime. If you then, however, personally inflicted it with your own hands, wanted to – in other words, I guess the reason, the policy behind this, and I think looking at the policy helps you distinguish this, we want to find people who actually wanted to commit the injury more culpable. So we're going to have an enhancement that says you're not – not only were you the one that drove the car there, but then you went with your own hands and personally inflicted it. Obviously – Kagan, let me ask you, just in the California system, was there a petition for reconsideration of the court of appeal decision? Absolutely. Okay. On this ground. Absolutely. I can find it. And it is in the excerpts of record. I commend the Court on that issue and particularly on Claim No. 2, because in Claim No. 2, the whole point is they keep arguing a case which – a claim which we're not making. Right. I understand. And he didn't have an opportunity to argue that. Right. That's why I'm not here. I'm just saying. Okay. And I think you've well exceeded your time now. I'm sure that I did. I appreciate the argument from both counsel. It's a very difficult, interesting, unusual case. So I appreciate both of you for your briefing and your argument. The case of Dahlberg v. Cash is submitted.
judges: Wallace, McKeown, Gould